EXHIBIT 1

1  Brian J. Panish (SBN 116060)
   Wyatt Vesperman, Esq. (SBN 322865)
2  Pete Kaufman, Esq. (SBN 269297)
   Panish |Shea | Boyle| Ravipudi, LLP
3  11111 Santa Monica Blvd., Ste. 700
   Los Angeles, CA 90025
4  Tel: (310) 477-1700
5  Fax: (310) 477-1699

6
   Jack H. Anthony, Esq.  (SBN 114440)
7  Rebekah Yabko, Esq.  (SBN 312467)
   LAW OFFICES OF JACK H. ANTHONY
8  276 Victoria Street
   Costa Mesa, CA 92627
9  Telephone:  (949) 642-1432
10 Facsimile:  (949) 642-1446

11 Attorneys for J.G. and J.M., minors
12 by and through their guardian ad litem, Dennis Moore

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO

**JUL 1 3 2023**

BY: _____
        Rina Phillips, Deputy

13
## SUPERIOR COURT OF THE STATE OF CALIFORNIA
14
## FOR THE COUNTY OF SAN BERNARDINO
15

16
17 J.G. and J.M., minors, by and through their    )   CASE NUMBER: CIV SB 2 3 1 5 9 1 2
   guardian ad litem, Dennis Moore,               )
18                                                 )   **COMPLAINT**
                        Plaintiffs,                )
19                                                 )
20              vs.                                )
                                                   )
21 COUNTY OF SAN BERNARDINO, TONGA                 )
   TOPAU, MONAU GRUNDY, JENNIFER                   )
22 ANDRADE, MONIQUE KEY, NAKILA                    )
   HILL, LUZ ESPARZA-REY, ELISA                    )
23 HERNANDEZ, TISH CRAWFORD, ARLINE                )
   POLANCO, PHONICIA SMITH-LONG and                )
24 DOES 1 through 100, inclusive,                  )
25                                                 )
                        Defendants.                )
26                                                 )

27

28
        COME NOW Plaintiffs J.G. and J.M., minors, by and through their guardian ad litem,

                                    1
                              **COMPLAINT**

Dennis Moore, and for causes of action against Defendants, and each of them, complain and allege as follows:

### **GENERAL ALLEGATIONS**

1.     Plaintiffs J.G. and J.M. (hereinafter referred to collectively as "Plaintiffs" and individually as "J.G." and "J.M.") are two young boys who were 4 years old and 2 years old, respectively, at the time that their infant brother, Jamari Mendez, was brutally tortured and murdered by his biological parents Antanita Miller and Ricardo Mendez, while Plaintiffs were present. J.G. was born on September 30, 2017. J.M. was born on September 24, 2019.

2.     Antanita Miller is the biological mother of Plaintiffs J.G. and J.M. and Jamari Mendez. Ricardo Mendez is the biological father of Plaintiff J.M. and Jamari Mendez.

3.     Jamari Mendez, Plaintiffs' now-deceased brother, was born on March 5, 2021 and died on or about April 25, 2022. Jamari died without a will. Jamari Mendez died as a result of felonious and intentional acts of his parents Antanita Miller and Ricardo Mendez who are therefore barred from any benefit resulting from the death of Jamari Mendez.

4.     Prior to the time of the incidents upon which Plaintiffs' claims are based, the Juvenile Court for the County of San Bernardino declared Plaintiffs and their brother Jamari to be dependents of the Juvenile Court.

5.     Plaintiffs allege that Defendants County of San Bernardino (hereinafter "COSB") and Does 1 through 20, provide child welfare services to protect and promote the welfare of all children. Plaintiffs allege that Defendants COSB and Does 1 through 20 have mandatory duties to develop, establish and implement policies and programs designed to protect the legal and human rights of children, including children who are victims of neglect and abuse.

6.     Plaintiffs complied with the administrative claim requirements of California *Government Code* §§ 910 et seq. On October 24, 2022, Plaintiffs each presented governmental claims to Defendant COSB. Defendant COSB did not respond to the claims within 45 days as required by Govt. Code § 912.4(a). On January 26, 2023, Defendant COSB rejected Plaintiffs' claims. This complaint is filed within 6 months of that rejection.

7.     On March 6, 2023, Plaintiffs each presented amended governmental claims and

1    applications to present late claims to Defendant COSB. The applications to submit late claims

2    were not responded to by COSB and were therefore deemed denied 45 days after submission

3    pursuant to Govt. Code § 911.6(c). It is Plaintiffs' intention to present a motion for relief to this

4    court within 6 months of this deemed denied date as to the applications to present late claims

5    that were not responded to by COSB.

6         8.     The true names, acts, liability and capacities of Defendants Does 1 through 100,

7    inclusive, and each of them, are unknown to Plaintiffs and Plaintiffs therefore sue said

8    Defendants by and with such fictitious names. Plaintiffs are informed and believe and thereon

9    allege that each of the Defendants designated herein as a fictitiously named Defendant is in

10   some way, manner or form, and to some extent, responsible for the acts, events and happenings

11   herein alleged and referred to, and that each of these Defendants, in some way, manner or form

12   and to some extent, caused detriment, damage and injury to Plaintiffs as hereinafter alleged. At

13   such time that Plaintiffs may ascertain the true names, acts, liability and capacities of such

14   fictitiously named Defendants, Plaintiffs will seek leave to amend this Complaint by setting

15   forth the same, along with the appropriate charging allegations.

16        9.     Plaintiffs are informed and believe and upon such information and belief allege

17   that at all times mentioned herein, Defendants, and each of them, were the agents, servants,

18   employees, or joint venturers of their co-Defendants, and were, as such, acting within the

19   course, scope, purpose and authority of such agency, employment, or joint venture; that

20   Defendants in doing the things alleged herein were the actual, apparent, implied or ostensible

21   agents of the remaining Defendants and acting within the course and scope of said agency or

22   employment.

23        10.    Plaintiffs are informed and believe and thereon allege that copies of all generated

24   reports of suspected abuse or neglect of children made pursuant to the Child Abuse and Neglect

25   Reporting Act (CANRA) (referred to herein as CANRA  referrals) referenced in this pleading

26   were sent by email or facsimile to the Office of San Bernardino County Counsel. The Office of

27   San Bernardino County Counsel at all times relevant to this complaint represented the County

28   of San Bernardino Department of Children and Family Services (DCFS) and was and is aware

3

**COMPLAINT**

1   of the obligations of the DCFS with regard to the making and handling of CANRA referrals of
2   suspected abuse and neglect of children, including the obligation to investigate allegations of
3   suspected abuse and/or neglect.

4   11.   Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key,
5   Nakila Hill, Luz Esparza-Rey, Elisa Hernandez and Does 1 through 5 were at all times relevant
6   to this complaint social services practitioners (SSPs) or social workers employed by the COSB
7   Department of Children and Family Services (DCFS) and assigned to oversee and manage the
8   investigation, detention, placements and services which were required to be provided to
9   Plaintiffs, and which Plaintiffs were entitled to while entrusted to the custody, care, and control
10  of the COSB DCFS. At all relevant times mentioned herein, Defendants Tonga Topau, Monau
11  Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez and
12  Does 1 through 5 were acting within the course and scope of their duties as employees and/or
13  agents of COSB. In addition, at all relevant times they acted in accordance and conformance
14  with the regularly established customs and practices of COSB DCFS. Finally, at all relevant
15  times alleged herein, Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique
16  Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez and Does 1 through 5 were acting under
17  color of state law.

18  12.   At all times relevant to this complaint Defendants Tish Crawford, Arline
19  Polanco, Phonicia Smith-Long, and Does 6 through 10 were supervising social services
20  practitioners (SSSPs) employed by the COSB DCFS and were assigned to and responsible for
21  the supervision and training of Defendants Tonga Topau, Monau Grundy, Jennifer Andrade,
22  Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez and Does 1 through 5. Moreover,
23  Defendants Tish Crawford, Arline Polanco, Phonicia Smith-Long, and Does 6 through 10 were
24  responsible for the management and supervision of Defendants Tonga Topau, Monau Grundy,
25  Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez and Does 1
26  through 5 to ensure that they met their obligations to provide for Plaintiff' continued safety and
27  security while Plaintiffs remained under the care, custody, and control of COSB. At all relevant
28  times mentioned herein, Defendants Tish Crawford, Arline Polanco, Phonicia Smith-Long, and

4

1   Does 6 through 10 were acting within the course and scope of their duties as employees and/or

2   agents of COSB. In addition, at all relevant times they acted in accordance and conformance

3   with the regularly established customs and practices of COSB DCFS. Finally, at all relevant

4   times alleged herein, Defendants Tish Crawford, Arline Polanco, Phonicia Smith-Long, and

5   Does 6 through 10 were acting under color of state law.

6                          **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

7        13.    Ricardo Mendez has the following criminal history of arrests and convictions for

8   domestic violence perpetrated against Antanita Miller: March 1, 2017, Penal Code § 242

9   Battery-Misdemeanor; July 11, 2017, Penal Code § 273.5, Inflict Corporal Injury on

10  Spouse/Cohabitant/Date-Misdemeanor; June 25, 2018, Penal Code § 166(c) Contempt Violate

11  Protective Order-Misdemeanor; October 8, 2020, Penal Code § 422(a) Threaten Crime with

12  Intent to Terrorize-Felony.

13       14.    On October 17, 2014, the Superior Court of California for the County of Los

14  Angeles issued a restraining order against Ricardo Mendez, wherein the protected persons are

15  listed as Antanita Miller and her family, including the minor S.M., daughter of Antanita Miller

16  and Ricardo Mendez and sibling and half-sibling of Plaintiffs.

17       15.    On or about September 24, 2019, while Antanita Miller was in the hospital

18  giving birth to Plaintiff J.G., when asked during a routine domestic violence screening if she

19  had ever been emotionally or physically abused by her partner, she responded "yes" and stated

20  this happened a few times in the past year.

21       16.    On April 1, 2020, a CANRA referral was made against Ricardo Mendez and

22  Antanita Miller for general neglect, emotional abuse, and sexual abuse. It was reported to

23  Defendant COSB that Plaintiffs were being left alone at home, that Ricardo and Antanita were

24  ignoring public health warnings regarding COVID-19, that Ricardo was physically abusive to

25  Antanita, and that Ricardo and Antanita used crystal meth in the presence of Plaintiffs. Antanita

26  Miller reported to Defendant COSB that she used meth in the presence of Plaintiffs. The

27  allegations for sexual abuse and emotional abuse were deemed unfounded and the allegation

28  for general neglect was deemed inconclusive despite Antanita Miller's admission of

5

**COMPLAINT**

1   methamphetamine use in the presence of Plaintiffs.

2       17.     In connection with the April 1, 2020 referral, Defendant COSB recorded in an

3   Investigation Information form that, "The Department of Children and Family Services and the

4   reporting party are worried that father, Ricardo Mendez will engage in domestic violence with

5   the mother, Antanita Miller, and that Ms. Miller will continue to use drugs, placing the children

6   at risk of serious abuse and/or neglect."

7       18.     On April 1, 2020, the Chino Police Department responded to a call regarding a

8   CANRA referral in which it was reported that Antanita had left the house with Plaintiffs to

9   possibly see Ricardo Mendez and abuse controlled substances. Despite there being a restraining

10  order in place against Ricardo Mendez, it was reported that Antanita Miller and Ricardo Mendez

11  had been in contact and that Antanita would sneak Ricardo into her parents' home. It was

12  reported that Antanita was using controlled substances again, including around Plaintiffs.

13      19.     On April 2, 2020, Antanita Miller reported to Officer Varnes with the Chino

14  Police Department that Ricardo Mendez physically abused her in front of Plaintiffs for talking

15  with police regarding the CANRA referral. Ricardo suffocated Antanita and hit her in the face,

16  causing bleeding and swelling. Antanita reported that she used methamphetamine about a

17  month prior with Ricardo. She further reported that Ricardo was violent with her, even with

18  Plaintiffs present, and he used controlled substances with Plaintiffs present. Antanita reported

19  that a police report was filed with Montclair Police Department concerning the incident.

20      20.     On April 8, 2020, Antanita Miller reported to Defendant COSB that Ricardo

21  Mendez forced her to use methamphetamine approximately two weeks prior. She reported that

22  she was at a hotel with Ricardo when she last used methamphetamine and that Plaintiffs were

23  present.

24      21.     On October 8, 2020, the Superior Court for the County of San Bernardino issued

25  a criminal protective order for domestic violence against Ricardo Mendez, wherein Antanita

26  Miller was listed as the protected person.

27      22.     On December 19, 2020, a CANRA referral was made against Antanita Miller

28  and Ricardo Mendez for emotional abuse and general neglect. In connection with the CANRA

6

**COMPLAINT**

1  referral, it was reported that when Antanita was seven months pregnant, while being transported

2  by a friend in a car, Ricardo struck Antanita four times in the face while Plaintiff J.G. was sitting

3  unrestrained in Ricardo's lap in the car. In connection with the CANRA referral, Ricardo

4  Mendez reported that the domestic violence with Antanita is mutual and that she hits him in the

5  presence of the children. The allegation of emotional abuse was deemed inconclusive and the

6  allegation of general neglect was deemed substantiated.

7      23.     In connection with the December 19, 2020 CANRA referral, Defendant COSB

8  recorded in an Investigation Information form that "The mother initially appeared protective

9  however was dishonest with CFS and has continued to engage in a relationship with the father

10 Mendez."

11     24.     On January 19, 2021, Antanita Miller reported to Defendant COSB that she was

12 in a confidential placement at a domestic violence shelter but would not provide more

13 information. On February 24, 2021, Antanita then reported that she never actually resided in a

14 domestic violence shelter.

15     25.     On February 25, 2021, Ricardo Mendez reported to Defendant COSB that he is

16 in regular contact with Antanita Miller, he last saw Plaintiff J.M approximately three days prior,

17 and Antanita would bring the children to his mother's house for him to visit with them. Ricardo

18 further reported they have ongoing domestic violence in their relationship and that both he and

19 Antanita hit one another.

20     26.     On February 26, 2021, Plaintiffs were detained from their parents by the COSB

21 DCFS due to severe and ongoing domestic violence between Antanita Miller and Ricardo

22 Mendez and substance abuse by Ricardo Mendez.

23     27.     In connection with Plaintiffs' detention on February 26, 2021, in a Statement of

24 Probable Cause for Detention Warrant, Defendant COSB recorded that "CFS has tried to work

25 with the mother to keep the children safe in her care however she has not been honest with

26 CFS."

27     28.     On February 26, 2021, SSSP Avery for Defendant COSB advised Antanita

28 Miller that due to her numerous lies throughout the investigation, going to a shelter with the

7

1   children was not an option.

2       29.    On February 26, 2021, Plaintiffs' maternal grandfather reported that there is a

3   long history of violence between Antanita Miller and Ricardo Mendez, including Ricardo and

4   his family holding Antanita at their home for several months when she was 14 years old and

5   that when she returned home she was pregnant. Plaintiffs' grandfather further reported that

6   Ricardo attacked him while with Antanita and cut him with a knife under his arm and cut

7   Antanita on the chest and reported that Ricardo's sister forced Antanita to use

8   methamphetamine when she was a teenager and that Ricardo's siblings beat up Antanita in front

9   of the paternal grandmother.

10      30.    On February 28, 2021, SSSP Avery for Defendant COSB received a voicemail

11  from Ricardo Mendez, in which he was very vulgar and made sexually explicit comments and

12  sounded as though he was under the influence.

13      31.    On March 5, 2021, Jamari Mendez, the Decedent, was born and on March 7,

14  2021, he was subsequently detained from his parents, as he was considered at risk due to his

15  siblings being abused.

16      32.    On March 9, 2021, Tonga Topau was assigned as the primary social worker to

17  the family.

18      33.    On March 24, 2021, Defendant COSB recommended Family Reunification (FR)

19  Services be provided to Antanita Miller and Ricardo Mendez.

20      34.    In a Jurisdiction/Disposition Report dated March 24, 2021, Defendant COSB

21  recorded, "Mr. Mendez demonstrates a very violent pattern of behavior, and Ms. Miller

22  demonstrated her inability to protect on several occasions…" "Ms. Miller initially minimized

23  the allegations and told several alarming inconsistencies." "The Department is worried about

24  the severity and longevity of domestic violence." And "Mr. Mendez is extremely violent and

25  has a long history of violent behavior. Without formal services, the Department is worried that

26  his pattern of violence will continue, thus placing his children at risk of physical and emotional

27  harm."

28      35.    In May 2021, there were no documented contacts by COSB with any of Antanita

**COMPLAINT**

1  Miller's service providers or collaterals as required by the Case Plan, no documented individual
2  meeting with Antanita regarding services, insights, benefit, or a domestic violence relapse plan
3  and no documented attempts to locate Ricardo Mendez by COSB.

4      36.    In June 2021, there were no documented contacts by COSB with any of Antanita
5  Miller's services providers or collaterals as required by the Case Plan, no documented
6  individual meetings with Antanita regarding services, insights, benefits, or a domestic violence
7  relapse plan, no documented attempts to locate Ricardo Mendez and no visits to Antanita's
8  residence.

9      37.    In July 2021, there were no documented contacts by COSB with any of Antanita
10  Miller's services providers or collaterals as required by the Case Plan, no documented
11  individual meetings with Antanita regarding services, insights, benefits, or a domestic violence
12  relapse plan, no documented attempts to locate Ricardo Mendez and no visits to Antanita's
13  residence

14      38.    On July 14, 2021, SSP Monau Grundy was assigned as the primary social worker
15  to the family.

16      39.    In August 2021, there were no documented contacts by COSB with any of
17  Antanita Miller's services providers or collaterals as required by the Case Plan, no documented
18  individual meetings with Antanita regarding services, insights, benefits, or a domestic violence
19  relapse plan and no visits to Antanita's residence.

20      40.    By September 2, 2021, Defendant COSB began liberalizing visits between
21  Antanita Miller and J.G., J.M., and Jamari by allowing visits to be unsupervised. Defendant
22  COSB liberalized visits to become unsupervised without documented consultation with any of
23  Antanita Miller's assigned service providers or collaterals.

24      41.    In September 2021, there were no documented contacts with any of Antanita
25  Miller's services providers or collaterals as required by the Case Plan, and no documented
26  individual meetings with Antanita regarding services, insights, benefits, or a domestic violence
27  relapse plan,

28      42.    It is recorded in a Case Plan Update dated October 2021 that, "The Department

1  of Children and Family Services is worried that the children, Jamari, [J.M.], and [J.G.], will be
2  seriously, physically or emotionally harmed due to domestic violence between the parents."

3     43.     On October 16, 2021, Defendant COSB met with Antanita Miller at her home to
4  assess for overnight visits with J.G., J.M., and Jamari.

5     44.     On October 22, 2021, in a Status Review Report and during a Status Review
6  Hearing with the Juvenile Court, SSP Monau Grundy recommended that the Juvenile Court
7  allow the children to begin a 29-day visit with Antanita Miller. This recommendation was made
8  in the absence of ongoing monitoring, absence of completion of all Case Plan requirements,
9  despite zero documented contacts with any of Antanita's service providers or collaterals, only
10  one documented individual meeting with Antanita during the entire family reunification period,
11  failure to have a Domestic Violence Relapse Prevention Plan in place as required by the Case
12  Plan, failure to develop a Safety Plan as require by the Case Plan and failure to document a
13  Safety Support Network as required by the Case Plan.

14     45.     On October 22, 2021, based upon SSP Monau Grundy's recommendation, the
15  Juvenile Court authorized a 29-day visit between J.G., J.M., Jamari and their mother Antanita
16  Miller. On this same date, Defendant COSB returned J.G., J.M. and Jamari to Antanita Miller
17  for a 29-day visit with Family Maintenance services. Following the children's return, Antanita
18  would hit them.

19     46.     On November 8, 2021, SSP Jennifer Andrade was assigned as the primary social
20  worker to the family.

21     47.     On November 19, 2021, SSP Jennifer Andrade for Defendant COSB conducted
22  a video chat visit with Antanita Miller and Jamari and Plaintiffs, without documenting a reason
23  for the video chat as opposed to an in-person visit. SSP Andrade did not speak with the children
24  separately or conduct a tour of the home to assess the home's condition, necessities, food, or
25  diapers. SSP Andrade did not ask Antanita questions regarding the whereabouts of or contact
26  with Ricardo Mendez. Antanita informed SSP Andrade that she was unemployed and SSP
27  Andrade made no assessment as to how resources would be managed or how the children's
28  needs would be met.

48.     On November 22, 2021, during a Further Six Month Review Hearing with the Juvenile Court, SSP Monau Grundy recommended that the Juvenile Court allow Plaintiffs and Jamari to remain in the care of Antanita Miller under a Family Maintenance Case Plan. This recommendation was made despite SSP Monau Grundy not being Jamari's assigned primary social worker and failing the notify the Court of this fact; in the absence of any adequate monitoring of the children in the mother's care during the 29-day visit, the absence of any in-person observations of the children or unannounced visits to the home; despite zero documented contacts with any of Antanita's service providers or collaterals, despite only one documented individual meeting with Antanita during the entire family reunification period, despite a failure to have a Domestic Violence Relapse Prevention Plan as required by the Case Plan, despite a failure to develop a Safety Plan as require by the Case Plan, and despite a failure to document a Safety Support Network as required by the Case Plan.

49.     On November 22, 2021, as a result of the recommendation of SSP Monau Grundy, Jamari and Plaintiffs were returned and placed in the custody of Antanita Miller, with Defendant COSB to supervise and report, and with Antanita to participate in the family maintenance case plan. Reunification services to Ricardo Mendez were terminated.

50.     Following J.G., J.M., and Jamari's return to Antanita Miller, Antanita would regularly take Jamari to the home of Carmen Mendez, the mother of Ricardo Mendez, in between monthly social worker visits with Defendant COSB. Social workers would conduct the visits towards the end of the month, almost exclusively announced visits, so Antanita and Ricardo would retrieve Jamari from the home of Carmen Mendez in time Jamari to be in the home to be present for COSB social worker visits. During these visits, Jamari had visible marks and bruises on his body.

51.     By December 2021, Antanita Miller would physically abuse Jamari, including hitting him, kicking him, throwing him, pulling his hair out in clumps, scalding him with hot water causing blisters, and deliberately withholding food from him for approximately three consecutive days. Antanita would also encourage J.M and J.G. to hit Jamari. She subsequently claimed she did this because she did not feel bonded with Jamari because he was removed from

11

**COMPLAINT**

1 | her care upon his birth.

2 | 52.    On December 2, 2021, Carmen Mendez, the mother of Ricardo Mendez, posted
3 | a photo on Facebook of Jamari which showed severe marking and discoloration to his left cheek.

4 | 53.    On December 8, 2021, SSP Jennifer Andrade for Defendant COSB conducted a
5 | video chat with Antanita Miller. SSP Andrade falsely reported that she observed all three
6 | children were dressed appropriately for the weather and were free from any visible marks or
7 | bruises. However, Antanita informed SSP Andrade that the children were currently with the
8 | maternal grandmother and Antanita was on her lunch break. Antanita allegedly reported that
9 | she had been exposed to a family member who had COVID like symptoms, but that she was on
10 | her lunch break, despite recently telling SSP Andrade that she was unemployed. SSP Andarade
11 | made no further inquiries into the inconsistencies of Antanita's statements.

12 | 54.    In or about January 2022, Antanita Miller, J.G., J.M, and Jamari moved into an
13 | apartment in Barstow. In or about January 2022, Ricardo Mendez was released from prison and
14 | moved into the apartment with Antanita and the children. Between January 6, 2022 and January
15 | 24, 2022 there was no social worker assigned to the case of Plaintiffs J.G. and J.M. or Jamari
16 | or the family. The children's cases were assigned to a clerk during this time.  This was a critical
17 | period of time in terms of events occurring which required adequate supervision and
18 | monitoring, but during which no person trained or qualified to perform social worker duties and
19 | responsibilities was assigned to handle the cases of Plaintiffs, Jamari or the parents.

20 | 55.    Beginning on or around January 2022, after Ricardo Mendez moved into the
21 | apartment, he would urinate on Jamari, drag Jamari around by his arms, swing Jamari around
22 | by his legs, hit and kick Jamari, put his dirty toes in Jamari's mouth and burn Jamari in different
23 | locations of his body with a torch lighter by lighting the torch until it became hot, turning off
24 | the flame, and then pressing the hot nozzle on Jamari's skin. Ricardo would also hit and punch
25 | J.G. and J.M., burn J.G. and choke J.M. Antanita and Ricardo would also have sex in front of
26 | the children.

27 | 56.    On January 24, 2022, Monique Key was assigned as the primary social worker
28 | to the family. On January 26, 2022, Antanita Miller called SSP Monique Key requesting the

12

**COMPLAINT**

1   case be transferred back to the previous office. Antanita stated during the call that she had an

2   apartment in Barstow, however she is never there and she and the children stay at the maternal

3   grandmother's home in Chino. During this call, Antanita Miller reported that no worker has

4   ever visited her Barstow residence or her mother's residence and reported that since the children

5   were returned to her care all visits had been via video chat and requested that SSP Key conduct

6   video visits.

7        57.    On January 29, 2022, SSP Monique Key made an announced visit to Antanita

8   Miller's apartment in Barstow. Antanita reported that she and J.M. tested positive for COVID.

9   SSP Key did not request or obtain confirmation of the claimed COVID diagnosis, assessed the

10  children from the front door and did not enter the home. SSP Key observed a sofa, television,

11  and television stand in the living room, and recorded that the room appeared messy with food

12  and drinks and boxes alongside the wall.

13       58.    In January 2022, there are no documented contacts with any service providers or

14  collaterals of Antanita Miller, J.G., J.M, and Jamari as required by the Case Plan, no

15  determination where Antanita and the children were living, no assessment of the residence to

16  ensure necessities and utilities were in place, no assessment to determine whether there were

17  signs of additional residents such as Ricardo Mendez and no verification of Antanita's

18  employment.

19       59.    In or around February 2022 or March 2022, when Jamari was crying, Antanita

20  Miller turned on the bathroom sink in her apartment until the water was scalding hot. She then

21  put the side of Jamari's torso under the water to burn him, causing his skin to blister, which

22  resulted in a circular approximately six-inch scar on Jamari's side.

23       60.    On February 22, 2022, SSP Monique Key and trainee SSP Woodly made an

24  announced visit to Antanita Miller's apartment in Barstow. SSP Key recorded in a delivered

25  service log that she "observed no male presence throughout each room including the bedroom

26  closets. The home was slightly messy. The undersigned observed some missing drawers in the

27  bathroom however..." and "Upon entering the home, there was an odor in which the

28  undersigned initially thought was bug spray. The smell was faint... SSP Woodly stated that she

13

**COMPLAINT**

1   believes the home smelled of a gas leak." SSP Key and SSP Woodly then left.

2       61.    On February 22, 2022, SSP Monique Key and SSP Woodly returned to the home

3   of Antanita Miller for a second visit that day, this time unannounced, while Ricardo Mendez

4   was present in the home. SSP Key and SSP Woodly knocked on the door. Ricardo Mendez

5   observed SSP Key and SSP Woodly outside the front door through the peep hole. Antanita did

6   not answer the door. SSP Key and SSP Woodly then returned with the manager to unlock the

7   door. Ricardo left out of the back door. Despite Antanita Miller informing SSP Key during the

8   first visit that she would be home all day because she did not have a car, Antanita took 10

9   minutes to open the door and said that she and the children were taking a nap. SSP Key and

10  SSP Woodly made no further inquiries regarding this incident.

11      62.    In February 2022, there are no documented contacts with any service providers

12  or collaterals of Antanita Miller, J.G., J.M, and Jamari as required by the Case Plan, no

13  verification of Antanita's employment, and no inquiries about Ricardo Mendez and his

14  whereabouts.

15      63.    In or around March 2022, Antanita Miller resumed using methamphetamine.

16      64.    On March 24, 2022, Antanita Miller took Jamari to the residence of Carmen

17  Mendez, the mother of Ricardo Mendez. During the visit, Jamari had significant visible injuries

18  on his mouth, cheek, and nose. Leslie Mendez, Ricardo's sister, believed the injuries were so

19  significant and suspicious that she did not allow Jamari to return home with Antanita or Ricardo.

20  On March 28, 2022, Antanita convinced Leslie to let her take Jamari home because she had an

21  upcoming home visit with Defendant COSB.

22      65.    On March 30, 2022, SSP Monique Key made an announced visit to Antanita

23  Miller's home. During the visit, Miller reported that she turned down a job "to be a stay-at-

24  home mom" and was receiving assistance through the Transitional Assistance Department

25  (TAD) office. In connection with this visit, SSP Key documented in a delivered service log

26  entry that "no marks or bruises seen on visible parts of the children's bodies," despite the

27  significant visible injuries on Jamari's face that were observed by Leslie Mendez only six days

28  earlier.

66.     In March 2022, there are no documented contacts with any service providers or collaterals of Antanita Miller, J.G., J.M, and Jamari as required by the Case Plan, and no inquiries about Ricardo Mendez and his whereabouts.

67.     In or around April 2022, Antanita Miller would slap and punch Jamari in the head and kick Jamari with and without shoes on and throw Jamari into his crib. One incident involved Antanita kicking Jamari in the back, causing him to fall and his face to hit her bed, resulting in a visible injury above his eye.

68.     On April 22, 2022, SSP Luz Esparza-Rey attempted to contact Antanita Miller and Ricardo Mendez to make arrangements to see J.G., J.M. and Jamari, but the cell phone number called was out of service and could not receive calls. SSP Esparza-Rey documented an attempt to contact Ricardo Mendez to arrange visitation, demonstrating Defendant COSB's awareness of Ricardo's presence around the children.

69.     On or about April 24, 2022, Ricardo Mendez and Antanita Miller used methamphetamine together while at home in the presence of the three children. On or about April 25, 2022, at approximately 3:00 A.M., Ricardo and Antanita heard Jamari crying. Ricardo and Antanita entered the room where Jamari was and took turns hitting him all over his body, with both open hands and closed fists. Ricardo punched Jamari approximately eight times in the stomach and Antanita punched Jamari approximately four times in the stomach. Jamari continued to cry. Antanita then began to shake Jamari. Jamari stopped crying and his eyes rolled into the back of his head. Ricardo put water on Jamari's face in an attempt to "wake him up" and subsequently attempted to perform CPR. Jamari stopped breathing and they put him back into his crib. J.G. and J.M. witnessed Ricardo and Antanita murder their little brother. J.G. witnessed Antanita and Ricardo punch Jamari in the stomach and shake Jamari. Shortly after Jamari died, Ricardo and Antanita fell asleep and in the morning when they woke up Jamari "was still dead." Ricardo picked up Jamari, brought him to J.G., and told J.G., "Tell your brother to wake up. Brother is sleeping." J.G. got close to Jamari and said, "Brother wake up." At approximately 8:00 A.M., Ricardo and Antanita drove J.G. to school with J.M. also in the car and Jamari's deceased body wrapped in a blanket in his car seat.

15

70.     On April 25, 2022, SSP Elisa Hernandez attempted to contact Antanita Miller and Ricardo Mendez to make arrangements to see J.G., J.M., and Jamari, but again the cell phone number called was out of service and could not receive calls. SSP Hernandez's documented attempt to contact Ricardo Mendez to arrange visitation demonstrated Defendant COSB's awareness of Ricardo's presence around the children.

71.     On April 25, 2022, at approximately 2:00 P.M., Ricardo Mendez and Antanita Miller picked J.G. up from school with J.M. and Jamari's deceased body still in the car. Ricardo and Antanita then drove the children to Ricardo's mother's house in Pomona.

72.     On April 25, 2022, at approximately 7:00 P.M., Antanita Miller, Ricardo Mendez, J.G., J.M., and Jamari's deceased body arrived at the home of Ricardo's mother. Upon their arrival, Ricardo's sister asked where the children were, but Antanita ignored her. Ricardo's sister could see J.G. and J.M. from the front passenger window. She then asked twice where Jamari was, to which Antanita responded, "He's at my mom's house! Why do you miss him?" Antanita told Ricardo's sister not to open the car door because J.M. had defecated on himself. Ricardo's sister opened the door and smelled a strong odor that she had never smelled before. Ricardo, Antanita, J.G., and J.M. then entered the home. Ricardo's sister then overheard her mother state that Antanita had just said, "the babe had passed away." Ricardo's sister began questioning Ricardo as to where and what happened to Jamari. Ricardo told her that Jamari had been dead for a week, then he said maybe he had been dead for three days. Ricardo's sister began yelling at Ricardo and Antanita asking for Jamari's whereabouts. They responded that Jamari was in the car, so Ricardo's sister ran outside and when they opened the rear lift gate of the car, he was in his car seat but appeared unresponsive. Shortly thereafter, Ricardo's sister and another individual drove Jamari to Pomona Valley Hospital.

73.     On April 25, 2022, at approximately 7:55 P.M., Jamari arrived at Pomona Valley Hospital. At 8:11 P.M., Jamari was pronounced dead.

74.     On April 25, 2022, at approximately 7:55 P.M., law enforcement was dispatched to Pomona Valley Hospital. Shortly thereafter, law enforcement detained Antanita Miller and Ricardo Mendez.

16

75. On April 25, 2022, SSP Luz Esparza-Rey observed Jamari's body at Pomona Valley Hospital. She observed Jamari to have markings of circular shapes on different parts of his body with bruises of different colors and shapes all over his body in different stages of healing, a burn mark circular in shape on the left side of his neck, swelling on his chest, circular shaped burns on his right and left thighs, a circular shaped burn and bruise on his right knee, and markings and bruising to his back. To describe Jamari's injuries, SSP Esparza-Rey stated, "It appeared as if every part of his body had some type of marking or burn to him."

76. On or about April 25, 2022, when SSP Luz Esparza-Rey took custody of Plaintiffs J.G and J.M., J.G. vomited in her office and J.M. had a rash on his back.

77. On April 27, 2022 and April 28, 2022, a two-day autopsy was performed on Jamari. As of the date of the filing of this Complaint, the autopsy report is yet to be completed. Preliminarily, Jamari's external and internal injuries, include, but are not limited to:

    a.    Seven burns to Jamari's left leg, 11 burns to his right leg, four burns to the left side of his neck, and two burns to his chest, all appearing to have been caused by a torch lighter;

    b.    Circular discoloring to the right side of Jamari's torso that was approximately three inches wide and a half inch tall, possibly caused by the scalding burn incident occurring in or around February 2022 or March 2022;

    c.    Bruising to the inside and around Jamari's ears, multiple bruises to his back, the back of his neck, his right forearm, and face;

    d.    Multiple scars to Jamari's face, including, but not limited to a scar above his right eye, four scars on the bridge of his nose, and three scars on his chin;

    e.    Multiple lacerations to Jamari's inner lips and a torn frenulum;

    f.    Internal bruising throughout his entire body which was not visible at the surface of his skin;

    g.    Hemorrhaging behind both of Jamari's eyes around the optic nerve;

    h.    Approximately 22 broken ribs in various stages of healing; and

    i.    Suspicious older adherent brain clots.

17

**COMPLAINT**

78.     The law enforcement investigation of the Barstow apartment discovered the following items indicative of Ricardo Mendez's presence in the apartment: two razor electric dirt bikes; two sets of soaps in the shower, one set for men and one set for women; Ricardo's parole paperwork; a manila folder containing mail addressed to Ricardo at his mother's Pomona address.

79.     Antanita Miller and Ricardo Mendez have both been charged with Murder, Assault of a Child resulting in Death, and Torture, *Penal Code* §§ 187(a), 273ab(a), and 206, in connection with the events alleged herein.

## FIRST CAUSE OF ACTION

### Breach of Mandatory Duties

### By Plaintiffs J.G. and J.M.,

### (Against Defendants County of San Bernardino, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, inclusive)

80.     Plaintiffs hereby refer to, incorporate by reference, and reallege as though fully set forth in this cause of action, each and every allegation contained in the paragraphs preceding this cause of action, and each and every allegation contained in the paragraphs following this cause of action.

81.     On or about February 26, 2021, after an incident of domestic violence, Defendants COSB and Does 1 through 20 detained Plaintiffs from their parents, Antanita Miller and Ricardo Mendez. On March 5, 2021, Jamari was born and two days later Defendants COSB and Does 1 through 20 also detained him.

82.     On October 22, 2021, Plaintiffs and Jamari were returned to their mother, Antanita Miller, for a 29-day visit, and on November 22, 2021, Plaintiffs and Jamari were returned to their mother under Family Maintenance services.

83.     Shortly after the return of Plaintiffs and Jamari to their mother, Antanita Miller and Ricardo Mendez began to physically abuse them, particularly Jamari. The abuse ultimately ceased on April 25, 2022, when Jamari was discovered to be dead.

18

**COMPLAINT**

84.     Plaintiffs allege on information and belief that between on or about February 26, 2021 through on or about April 25, 2022, Defendant COSB, by and through its employees and agents Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 violated mandatory duties including, but not limited to, those set forth in: the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) (the CDSS MPP was promulgated by the Department of Social Services pursuant to *Welfare & Institutions Code* § 16501 and imposes mandatory duties upon local agencies such as the COSB CFS), the County of San Bernardino Children and Family Services (CFS) Handbook, and the California *Health and Safety Code*.

85.     Plaintiffs allege that Defendant COSB, by and through its agents and employees Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 violated the following mandatory duties set forth in specific provisions of the Constitution, statutes, regulations, policies and other enactments including, but not limited to:

a.      The 14th Amendment to the United States Constitution by failing to provide reasonable safety and minimally adequate care as part of a dependent child's protected liberty interest that is owed once the state assumes wardship of a child. *Tamas v. Department of Social & Health Services* (9th Cir. 2010) 630 F.3d 833, 842;

b.      California *Penal Code* §§ 11166 et seq. by failing to report known and/or suspected neglect and/or abuse of J.G., J.M., and Jamari;

c.      Regulation 31-301 of the CDSS Manual of Policies and Procedures by failing to ensure that the provision of all services were consistent with the case plan goals specified in the case plans of J.G., J.M., Jamari, Antanita Miller and Ricardo Mendez;

d.      Regulation 31-310 of the CDSS Manual of Policies and Procedures by failing to monitor the physical and emotional conditions of J.G., J.M., and Jamari, by

19

1    failing to provide services appropriate to meet those needs, and by failing to take

2    action as necessary to ensure that J.G., J.M., and Jamari's protective needs were

3    met;

4    e.    Regulation 31-320 of the CDSS Manual of Policies and Procedures by failing to

5    visit J.G., J.M., and Jamari in-person at least once each calendar month, failing

6    to conduct a majority of visits with J.G., J.M., and Jamari in the home, failing to

7    visit with J.G., J.M., and Jamari alone and in a quiet and private setting, failing

8    to assess the safety and wellbeing of J.G., J.M., and Jamari, failing to adequately

9    conduct face-to-face contacts with J.G., J.M., and Jamari, and primarily

10   conducting announced rather than unannounced visits with J.G., J.M., and

11   Jamari. COSB policy, as stated in its CFS Handbook (Volume 3, Chapter AA,

12   Contact Policy & Procedures 3-AA-8FM), requires the social worker to conduct

13   at least one unannounced in-home visit each calendar month with the child and

14   parent/guardian and states that it is best practice to make unannounced visits

15   where the child physically resides in order to: 1. Observe and effectively assess

16   safety/risk factors, 2. Assess the family's current functioning and the child's

17   safety/well-being in the context of the home environment, 3. Identify the

18   parent's/guardian's strengths and concerns (e.g., what has or needs to be

19   improved), 4. Identify and respond to the family's current needs in order to

20   maintain the child in the home (e.g. additional referrals to resources) and 5.

21   Determine if additional intervention is necessary due to conditions that place the

22   child's safety at risk if s/he remains in the home;

23   f.    Regulation 31-325 of the CDSS Manual of Policies and Procedures by failing to

24   arrange for contact, as determined in the case plan, for Antanita Miller, in May

25   2021, June 2021, July 2021, August 2021, September 2021, and by failing to

26   visit Antanita Miller in-person a minimum of once each calendar month;

27   g.    Regulation 31-325 of the CDSS Manual of Policies and Procedures by failing to

28   arrange for contact, as determined in the case plan, for Ricardo Mendez during

20

**COMPLAINT**

the period of time that the case plan provided for contacts, and by failing to locate and visit Ricardo Mendez in-person a minimum of once each calendar month

h.    Regulation 31-335 of the CDSS Manual of Policies and Procedures by failing to make documented contact with any service providers, collaterals, or other professionals providing services to Antanita Miller, J.G., J.M. and/or Jamari, by failing to request written reports from said service providers, collaterals, or other professionals and by failing to ensure such reports are received and documented in the case record;

i.    Regulation 31-501 of the CDSS Manual of Policies and Procedures by failing to report and/or properly investigate reports of suspected abuse or neglect of J.G., J.M., and Jamari;

j.    Regulation 31-205.113, as further defined in All County Letter 09-31 and CDSS SDM Policy and Procedures Manual, by failing to complete an assessment of all adults living in the household, specifically Ricardo Mendez, at the time of each status review hearing, but no less often than once every six months, for the purposes of determining whether J.G., J.M., and Jamari should remain in the home;

k.    Regulation 31-325.111 of the CDSS Manual of Policies and Procedures by failing to verify the location of Ricardo Mendez, a parent named in the children's case plan, to assess the functioning of the parent as it pertains to meeting the children's basic and special care needs, and the safe maintenance of the children in the home.

86.    Plaintiffs allege that Defendant COSB, by and through its employees and agents Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 breached their mandatory duties as set forth in the preceding paragraph during the period of on or about February 26, 2021 through on or about April 25, 2022. Plaintiffs allege that the mandatory duties set forth in the preceding paragraph were designed to protect against the risk

21

1  of the particular kind of injuries to which Plaintiffs were subjected, including but not limited to,
2  the risk of neglect, abuse and mistreatment.

3        87.     Plaintiffs allege that had Defendant COSB, by and through its employees and
4  agents Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz
5  Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does
6  1 through 20 not breached their mandatory duties as herein alleged, they would have been
7  required to act upon evidence of the inappropriateness of the return and placement of J.G., J.M.,
8  and Jamari with Antanita Miller and Ricardo Mendez, including but not limited to the
9  information contained in the factual allegations section of this Complaint set forth above.

10        88.     Defendants would have been obligated to take measures to protect J.G., J.M.,
11  and Jamari or to remove them from the home where they were subjected to abuse, neglect, and
12  mistreatment, and ultimately death in the case of Jamari. Therefore, as a proximate result of
13  Defendants' failures to fulfill their mandatory duties, J.G., J.M., and Jamari suffered neglect,
14  abuse, and mistreatment, and ultimately death in the case of Jamari, from on or about February
15  26, 2021 through on or about April 25, 2022.

16        89.     Plaintiffs allege that Defendant COSB, by and through its employees and agents
17  Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey,
18  Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20
19  assumed duties to oversee, monitor and regulate the conduct of Antanita Miller and Ricardo
20  Mendez. J.G., J.M., and Jamari relied upon Defendants to fulfill these assumed duties, thereby
21  establishing a special relationship between J.G., J.M., and Jamari and Defendants. Plaintiffs
22  further allege that Defendants have breached other statutory and common law duties by
23  additional specific acts or omissions of which Plaintiffs are presently unaware and will seek
24  leave of the Court to amend this Complaint when Plaintiffs discover such acts or omissions or
25  at time of trial.

26        90.     As a direct result of the acts and omissions of Defendants COSB, Tonga Topau,
27  Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa
28  Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20,

**COMPLAINT**

1    Plaintiffs sustained general and special damages within the jurisdictional limits of this court
2    according to proof at trial. The damages sustained by Plaintiffs and for which they seek
3    compensation include damages associated with the wrongful death of Jamari Mendez pursuant
4    to *Code of Civil Procedure* § 377.60.

5                                  **SECOND CAUSE OF ACTION**

6                                          **Negligence**

7              **Breach of Duty of Due Care Arising Under Special Relationship**

8                                  **By Plaintiffs J.G. and J.M.,**

9    **(Against Defendants County of San Bernardino, Tonga Topau, Monau Grundy, Jennifer**

10           **Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish**

11           **Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, inclusive)**

12            91.     Plaintiffs hereby refer to, incorporate by reference, and reallege as though fully
13   set forth in this cause of action, each and every allegation contained in the paragraphs preceding
14   this cause of action, and each and every allegation contained in the paragraphs following this
15   cause of action.

16            92.     *Government Code* § 820 provides that an employee of a public entity is liable
17   for his or her acts or omissions to the same extent as a private person, and under *Government*
18   *Code* § 815.2 the public entity that employs the individual is vicariously liable for the torts of
19   its employee committed in the scope of employment. "[A] public employee generally is liable
20   for an injury caused by his or her act or omission to the same extent as a private person." *Lloyd*
21   *v. Cty. of Los Angeles*, 172 Cal. App. 4th 320, 330 (2009). "[W]hile public entities cannot be
22   held liable for their own negligence, they may be held vicariously liable for the negligent acts
23   of their individual employee." *Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539,
24   542 (9th Cir. 2011).

25            93.     Plaintiffs do not assert direct liability against Defendant COSB in this cause of
26   action. Plaintiffs assert only *respondeat superior* vicarious liability against Defendant COSB
27   for the acts and/or omissions of its employees and agents.

28            94.     Plaintiffs allege that Defendants COSB and Does 1 through 20, provide child

1  welfare services to protect and promote the welfare of all children.

2      95.    Plaintiffs allege that Defendants COSB, Tonga Topau, Monau Grundy, Jennifer

3  Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline

4  Polanco, Phonicia Smith-Long and Does 1 through 20 have mandatory duties to develop,

5  establish and implement policies and programs designed, among other things, to protect the

6  legal and human rights of children.

7      96.    A special relationship was established between the County of San Bernardino,

8  its social workers and supervisors, and Plaintiffs, Jamari, and similarly situated minors, under

9  which Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key,

10  Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia

11  Smith-Long and Does 1 through 20 owed Plaintiffs, Jamari, and similarly situated dependent

12  minors a duty of due care and a duty to protect Plaintiffs and Jamari from foreseeable harm.

13      97.    Plaintiffs and Jamari therefore relied upon Defendants COSB Tonga Topau,

14  Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa

15  Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 to

16  perform oversight, quality of care inspections, and other duties, and upon DCFS, to provide

17  such supervision and control over their health, welfare, safety and care, and as a result a special

18  relationship was thereby established between Plaintiffs and Defendants COSB, Tonga Topau,

19  Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa

20  Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 and

21  Jamari and Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key,

22  Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia

23  Smith-Long and Does 1 through 20.

24      98.    Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique

25  Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia

26  Smith-Long and Does 1 through 20, inclusive, knew or should have known of the evidence of

27  the inappropriateness of the return and placement of J.G., J.M., and Jamari with Antanita Miller

28  and Ricardo Mendez, including but not limited to the information contained in the factual

1  allegations section of this Complaint set forth above.  However, said Defendants, and each of

2  them, failed and neglected to properly exercise their respective duties and responsibilities and

3  therefore did not discover such misconduct, take action to stop such misconduct, and/or to report

4  such misconduct to the appropriate authorities.

5       99.    Despite the existence of the special relationships between Plaintiffs and

6  Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila

7  Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long

8  and Does 1 through 20, and Jamari and Defendants COSB, Tonga Topau, Monau Grundy,

9  Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish

10  Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, Defendants COSB,

11  Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey,

12  Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20

13  breached the duty of due care under a special relationship while in the scope of their agency or

14  employment, by failing and neglecting to fulfill or perform their respective duties to control,

15  monitor, care for and protect the health, safety and well-being of Plaintiffs and Jamari.

16       100.    As a proximate result of the breach of duty of due care under the respective

17  special relationships created and existing between Plaintiffs and Defendants COSB, Tonga

18  Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa

19  Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, and

20  Jamari and Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key,

21  Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia

22  Smith-Long and Does 1 through 20, Plaintiffs and Jamari suffered injuries and damages as

23  alleged herein. Plaintiffs and Jamari suffered physical abuse, psychological abuse, neglect, and

24  mistreatment, and death in the case of Jamari, which was reasonably obvious and could, should,

25  and/or would, have been discovered in the exercise of due care including, but not limited to, by

26  investigating and monitoring the home.

27       101.    Plaintiffs further allege that Defendants COSB, Tonga Topau, Monau Grundy,

28  Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish

1    Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 failed and neglected to

2    establish and implement policies and procedures to ensure the health, safety and well-being of

3    Plaintiffs, Jamari, and other minors, including, but not limited to, the failure to develop and

4    institute policies and procedures for conducting periodic examinations, in-person interviews,

5    and other methods designed to discover and prevent physical abuse, psychological abuse,

6    neglect, mistreatment, and death of minor dependents including Plaintiffs and Jamari.

7        102.    Had Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade,

8    Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco,

9    Phonicia Smith-Long and Does 1 through 20 not breached their respective duties of due care

10   under their special relationships, they could, should, or would have taken steps to prevent

11   physical and other abuse, neglect and mistreatment of Plaintiffs and Jamari, and the death of

12   Jamari, and taken measures to not return, protect, or remove Plaintiffs and Jamari to/from the

13   home where they were subjected to subjected to abuse, neglect, and mistreatment.

14       103.    As a proximate result of the acts and omissions of Defendants COSB, Tonga

15   Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa

16   Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20,

17   Plaintiffs and Decedent sustained general and special damages in amounts within the

18   jurisdictional limits of this court according to proof at trial. The damages sustained by Plaintiffs

19   and for which they seek compensation include wrongful death damages associated with the

20   death of Jamari Mendez pursuant to Code of Civil Procedure § 377.60.

21                           **THIRD CAUSE OF ACTION**

22                     **(Negligent Infliction of Emotional Distress)**

23                           **By Plaintiffs J.G. and J.M.**

24   **(As Against Defendants County of San Bernardino, Tonga Topau, Monau Grundy,**

25   **Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish**

26   **Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, inclusive)**

27       104.    Plaintiffs hereby refer to, incorporate by reference, and reallege as though fully

28   set forth in this cause of action, each and every allegation contained in the paragraphs preceding

                                       26
                              _____
                                   **COMPLAINT**

1    this cause of action, and each and every allegation contained in the paragraphs following this
2    cause of action.

3    105.   *Government Code* § 820 provides that an employee of a public entity is liable
4    for his or her acts or omissions to the same extent as a private person, and under *Government*
5    *Code* § 815.2 the public entity that employs the individual is vicariously liable for the torts of
6    its employee committed in the scope of employment. "[A] public employee generally is liable
7    for an injury caused by his or her act or omission to the same extent as a private person." *Lloyd*
8    *v. Cty. of Los Angeles*, 172 Cal. App. 4th 320, 330 (2009). "[W]hile public entities cannot be
9    held liable for their own negligence, they may be held vicariously liable for the negligent acts
10   of their individual employee." *Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539,
11   542 (9th Cir. 2011).

12   106.   Plaintiffs do not assert direct liability against Defendant COSB in this cause of
13   action. Plaintiffs assert only respondeat superior vicarious liability against Defendant COSB for
14   the acts and/or omissions of its employees and agents.

15   107.   Plaintiffs allege that they suffered serious emotional distress as a result of
16   perceiving the injury, torture, and death of their infant sibling Jamari.

17   108.   Plaintiffs allege that when Antanita Miller and Ricardo Mendez brutally tortured
18   and murdered Jamari, Plaintiffs were present at the scene and witnessed their brother's murder.

19   109.   Plaintiffs allege that they were aware that Antanita Miller and Ricardo Mendez
20   were causing injury, torture, and death of Jamari.

21   110.   Plaintiffs allege that the conduct of Defendants County of San Bernardino,
22   Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey,
23   Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20,
24   inclusive was a substantial factor in causing the circumstances leading up to the death of Jamari.

25   111.   Plaintiffs allege that Defendants COSB, Tonga Topau, Monau Grundy, Jennifer
26   Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline
27   Polanco, Phonicia Smith-Long and Does 1 through 20, inclusive, negligently caused the injury,
28   torture, and death of Jamari.

27

**COMPLAINT**

112.   A special relationship was established between the County of San Bernardino, its social workers and supervisors, and Plaintiffs, under which Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 owed Plaintiffs a duty of due care and a duty to protect Plaintiffs from foreseeable harm.

113.   Plaintiffs therefore relied upon Defendants COSB Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20 to perform oversight, quality of care inspections, and other duties, and upon DCFS, to provide such supervision and control over their health, welfare, safety and care, and as a result a special relationship was thereby established between Plaintiff and Defendants.

114.   Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, inclusive, knew or should have known of the evidence of the inappropriateness of the return and placement of J.G., J.M., and Jamari with Antanita Miller and Ricardo Mendez, including but not limited to the information contained in the factual allegations section of this Complaint set forth above.  However, said Defendants, and each of them, failed and neglected to properly exercise their respective duties and responsibilities and therefore did not discover such misconduct, take action to stop such misconduct, and/or to report such misconduct to the appropriate authorities.

115.   Despite the existence of the special relationships between Plaintiffs and Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, Defendants breached their duty  while in the scope of their agency or employment, by failing and neglecting to fulfill or perform their respective duties to control, monitor, care for and protect the health, safety and well-being of Plaintiffs and Jamari.

116.   Plaintiffs allege that their emotional distress included suffering, anguish, fright, horror, nervousness, grief, anxiety, shock, humiliation and shame.

**COMPLAINT**

117. Plaintiffs allege that an ordinary, reasonable person would be unable to cope with witnessing their infant sibling be brutally tortured and murdered.

118. As a proximate result of the acts and omissions of Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 20, Plaintiffs and Decedent sustained general and special damages, in amounts within the jurisdictional limits of this court according to proof at trial. The damages sustained by Plaintiffs and for which they seek compensation include wrongful death damages associated with the death of Jamari Mendez pursuant to Code of Civil Procedure § 377.60.

**FOURTH CAUSE OF ACTION**

**Violations of Constitutional Rights 42 U.S.C. § 1983**

**(Failure to Provide Dependent Minors Continued Safety and Security)**

**By Plaintiffs J.G. and J.M.**

**(Against Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10)**

119. Plaintiffs hereby refer to, incorporate by reference, and reallege as though fully set forth in this cause of action, each and every allegation contained in the paragraphs preceding this cause of action, and each and every allegation contained in the paragraphs following this cause of action.

120. At all relevant times alleged herein, Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10 were acting within the course and scope of their duties as COSB employees and under color of state law.

121. Plaintiffs are informed and believe and thereon allege that once the state assumes wardship or establishes dependency of a child, the state owes the child, as part of that person's protected liberty interest under the Fourteenth Amendment of the United States Constitution, reasonable safety and minimally adequate care.

29

**COMPLAINT**

122.    At all times applicable herein, said liberty interest and duties of government social workers and/or other agents was so clearly established that any reasonable social worker similarly-situated with Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10 would know it was a violation of Plaintiffs' and Jamari's fundamental rights to fail to provide for their continued safety and security and to fail to provide them with minimally-adequate care and placement.

123.    In addition, Plaintiffs allege that Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10, inclusive, were associated with the implementation of a foster care program designed to place, protect and care for minors subject to the jurisdiction of the Juvenile Court of the County of San Bernardino. Plaintiffs allege that Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10 regulate and are responsible for the monitoring of children placed in the care of the COSB Department of Children and Family Services (DCFS) by the Juvenile Court. Plaintiffs allege that Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10 have and had duties to implement policies and programs designed, among other things, to protect the legal and human rights of children receiving services from the County of San Bernardino Department of Children and Family Services.

124.    During the time Plaintiffs and Jamari remained in the care, custody, and control of COSB, Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10 were deliberately indifferent to Plaintiffs' and Jamari's health, safety, and security. Despite their legal obligation to meet those needs, Defendants, and each of them, knowingly and with deliberation, failed to do so.

COMPLAINT

125.    During the time Plaintiffs and Jamari remained in the care, custody, and control of Defendants COSB, Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10, these Defendants were deliberately indifferent to Plaintiffs' and Jamari's health, safety, and wellbeing. Despite their legal obligation to meet those needs, Defendants, and each of them, knowingly and with deliberation failed to do so. Specifically, as herein alleged, Defendants acted with a reckless disregard for and a deliberate indifference to Plaintiffs' and Jamari's known rights and needs by failing to provide for and ensure Plaintiffs' and Jamari's continued safety and security and by failing to ensure that Plaintiffs and Jamari resided in a safe and secure home. Contrary to their obligations, Defendants as herein alleged placed and maintained Plaintiffs and Jamari in a situation where it was reasonably foreseeable that Plaintiffs and Jamari would be subjected to ongoing neglect, physical abuse, and emotional abuse, and ultimately death.

126.    Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10, despite their actual and constructive knowledge of ongoing neglect and abuse in the home of Antanita Miller and Ricardo Mendez, placed and maintained Plaintiffs and Jamari in an inappropriate and unsafe home for a period of approximately six months, knowing that Plaintiffs and Jamari were in an environment where it was reasonably foreseeable that they would be subjected to neglect, physical abuse, emotional abuse, and ultimately death.

127.    Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10 knew, or with the exercise of reasonable care should have known, that the placement and/or maintenance of Plaintiffs and Jamari in the home of Antanita Miller and Ricardo Mendez presented an environment where it was foreseeable that Plaintiffs and Jamari would be subjected to ongoing neglect and abuse, and ultimately death.

128.    Defendants Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 6

31

**COMPLAINT**

through 10 as supervisors were aware through the Safe Measures Case History report of the acts and omissions of Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez and Does 1 through 5 and took no steps to intervene or ensure the health and safety of Plaintiffs and Jamari in an environment in which their health and safety was jeopardized and abuse and neglect was not only foreseeable but likely to take place. Plaintiffs allege that this conduct demonstrated a deliberate indifference toward Plaintiffs' and Jamari's abuse and neglect and violation of Plaintiffs' and Jamari's constitutional rights as herein alleged.

129.     Despite this knowledge, Defendants Tonga Topau, Monau Grundy, Jennifer Andrade, Monique Key, Nakila Hill, Luz Esparza-Rey, Elisa Hernandez, Tish Crawford, Arline Polanco, Phonicia Smith-Long and Does 1 through 10 ignored and failed to reasonably report and investigate reports of physical abuse or neglect, ignored and failed to report the open and obvious inadequate, unsafe, and unsecure environment, including but not limited to the information contained in the factual allegations section of this Complaint set forth above.

130.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Jamari suffered and continue to suffer injuries as alleged herein, including but not limited to injuries to Plaintiffs' and Decedent's person, pain, humiliation, anxiety, mental anguish, emotional distress, damage to reputation and personal relations, death, and other general and special damages in an amount to be ascertained according to proof at trial. Plaintiffs and Decedent suffered general and special damages within the jurisdictional limits of this Court and seeks them according to proof at trial. Plaintiffs have incurred attorney's fees that they will seek to recover as costs pursuant to 42 U.S.C. § 1988. The damages sustained by Plaintiffs and for which they seek compensation include wrongful death damages associated with the death of Jamari Mendez pursuant to Code of Civil Procedure § 377.60.

### FIFTH CAUSE OF ACTION

*Monell*-Related Claims

By Plaintiffs J.G. and J.M.,

**(As Against Defendants County of San Bernardino and Does 11 through 20, inclusive)**

131.    Plaintiffs hereby refer to, incorporate by reference, and reallege as though fully set forth in this cause of action, each and every allegation contained in the paragraphs preceding this cause of action, and each and every allegation contained in the paragraphs following this cause of action.

132.    Defendant COSB, including through its child welfare services agency the Department of Children and Family Services (DCFS) is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiffs' and Jamari's rights.

133.    Defendant COSB has been and is a named Defendant in other similar lawsuits targeting a pattern of deprivation of due process rights of children by its Department of Children and Family Services (DCFS) by failing to protect the safety of children and by creating and/or exposing minor dependents to harm.

134.    On May 27, 2019, the 2018-2019 Civil Grand Jury presented a final report to the San Bernardino County Board of Supervisors in which it referenced systemic problems regarding DCFS management, staffing, training and accountability and the DCFS's inability to meet its stated mission statement "to protect endangered children, preserve, to strengthen families, and develop alternative family settings." The Grand Jury recommended a complete reorganization of the COSB DCFS as a corrective measure to address systemic deficiencies in the services the DCFS provided due primarily to personnel issues and large caseloads. The Grand Jury observed that reorganization of the DCFS was previously recommended in 2011 after a six-month reorganization project conducted by the Deloitte Company that the Board of Supervisors engaged. The Grand Jury report of 2018-2019 stated that it was unable to learn any information as to the success of the reorganization project recommendations made in 2011.

135.    Plaintiffs allege on information and belief that not only did the DCFS fail to implement significant reorganization as recommended by the Grand Jury in 2011, but it instead misrepresented social worker caseloads and other statistics to the Department of Social Services in an effort to conceal its noncompliance with the Grand Jury recommendations and best

33

1   practice. For example, a COSB DCFS social worker testified in deposition that her caseload at
2   one time was 183 open referrals when the most emergency response cases ever reported by the
3   COSB DCFS was 196 cases for the entire County of San Bernardino. According to the Grand
4   Jury Final Report, the Child Welfare League of America (CWLA) recommends caseworkers
5   handle no more than 12 cases involving investigation. A caseload of 183 open investigation
6   referrals would represent a caseload of more than 15 times the limit recommended by the
7   CWLA.

8       136.    Plaintiffs allege that COSB engaged and engages in established and/or followed
9   procedures, customs, and/or practice of overwhelming its social workers with caseloads that far
10  exceed prescribed limits and that effectively prevent adequate management of assigned cases.

11      137.    Plaintiffs further allege that COSB also engaged and engages in established
12  and/or followed procedures, customs, and/or practices of deception through misrepresenting its
13  grossly excessive caseloads to the Department of Social Services and the public to conceal the
14  full extent of its improper conduct.

15      138.    On December 16, 2022, the 2022 Civil Grand Jury presented a final report to the
16  San Bernardino County Board of Supervisors and the Presiding Judge of the San Bernardino
17  Superior Court. The Grand Jury reached the conclusion that the San Bernardino County
18  Children and Family Services is too broken to fix and needs to be rebuilt from the ground up.
19  The Grand Jury strongly recommended DCFS be abolished, and a new system be created that
20  is community-based to help raise and parent foster children in the county.

21      139.    The 2022 Grand Jury found that DCFS does not have significant preventative
22  measures to stop the abuse or minimize it within their case. Specifically, the Grand Jury report
23  lists some preventative examples DCFS does practice: conducting Live Scans on prospective
24  resource foster parents, completing a DMV check once per year, conducting physical
25  inspections of prospective settings, and carrying out interviews. However, the Grand Jury found
26  that this was not enough and that Live Scans, DMV checks, home inspections, and interviews
27  only reveal the history of the caregivers. The measures are not extended to visitors to the home,
28  such as unknown family members, boyfriends/girlfriends, and other residents not known to

34

**COMPLAINT**

DCFS. The Grand Jury investigation revealed that these risk factorss have contributed to many of the substantiated sexual and physical abuse cases. The Grand Jury found that there is no separate oversight group that oversees the lack of accountability of DCFS and that presently DCFS has no local accountability, which allows them to operate behind an air of confidentiality.

140.    The 2022 Grand Jury found that social workers were not consistently making unannounced visits and were not doing a thorough home inspection on monthly visits. The Report states, "Unannounced visits will help the SW [social worker] identify regular visitors and changes to the home, which could indicate someone has moved into the home or is frequently visiting… The GJ [Grand Jury] evidence revealed that SWs [social workers] prefer to announce the monthly visits because they can be sure that there will be someone home when they arrive. … Evidence showed that some SWs [social workers] visit less than monthly and announce their visit ahead of time, allowing possible abusers to hide abuse problems." The Report further states, "At least one visit per month should be unannounced. The social worker would then see the home in its natural state, not in a prearranged manner. That way, the SW [social worker] may find adults in the home who are not supposed to be there, children put in closets, boyfriends/girlfriends visiting or living there without DCFS approval or background checks, and other questionable practices."

141.    The 2022 Grand Jury discovered that the average caseload for social workers in San Bernardino County is 70 to 90 cases and that evidence shows each social worker's caseload should not exceed a total of 40 for each month. The Grand Jury determined that the San Bernardino County social workers should visit resource homes and other foster settings at least four times per month, two unannounced, interview the children, and thoroughly inspect those homes on each visit.

142.    The 2022 Grand Jury found that "After a review of SBC CFS's Policies and Procedures Manual, the Grand Jury was surprised to find that there are no separate requirements specifically for visiting foster children ages birth to four years old. Babies and toddlers are the most vulnerable population because they are either non-verbal or have difficulty expressing themselves. Therefore, their safety is completely in the hands of the SWs assigned to them.

35

**COMPLAINT**

SWs, however, are only required to visit these children once per month! Physical/sexual abuse could be easily missed, which is completely unacceptable! The GJ recommends that babies and toddlers be visited at least four times per week for the first thirty days, and then two times per week until they are four years old. Every visit to these vulnerable children should also have a nurse attending, so that these young ones can be examined thoroughly."

143.   Defendant COSB, including through its entity DCFS, and those individuals in their official capacities who had supervisory and/or policy making authority, had a duty to Plaintiffs and Jamari at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed under the United States Constitution, including those under the Fourteenth Amendment, to include without limitation, liberty interests in reasonable safety and minimally adequate care, and the right to substantive and procedural due process.

144.   Said Defendants also had a duty to use reasonable care, including through the promulgation and implementation of procedures, policies and training, to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within the DCFS, so as to protect the constitutional rights of persons with whom its agents regularly come into contact, including Plaintiffs and Jamari, in order to avoid violation of their constitutional rights.

145.   Defendant COSB, including through its entity DCFS, established and/or followed procedures, customs, and/or practices which were the moving force behind the violations of Plaintiffs' and Jamari's constitutional rights, including those under the Fourteenth Amendments, by, but not limited to:

    a.   the custom and/or practice of overwhelming its social workers with caseloads that far exceed prescribed limits and that effectively prevent adequate management of assigned cases, directly and indirectly resulting in inadequate monitoring of the health and safety of children;

    b.   the custom and/or practice of maintaining children in placements with caregivers known or suspected to be physically and/or emotionally abusive and/or

36

**COMPLAINT**

neglectful;

c.    the custom and/or practice of failing to properly investigate allegations of neglect or abuse;

d.    the custom and/or practice of failing to conduct unannounced home visits and only conducting announced visits;

e.    the custom and/or practice of failing to conduct a sufficient number of visits for children under 4 years old;

f.    by acting with deliberate indifference in implementing a practice of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to the placement of foster children and the investigation and reporting of child neglect and abuse.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.)

146.    Defendant COSB, including by and through its entity DCFS and its policymaking officials, breached its duties and obligations to Plaintiff by, but not limited to, deliberately and indifferently failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Defendants, and Does 11 through 20, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected minor dependents, including Plaintiffs and Jamari.

147.    Defendant COSB knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause Plaintiffs and Jamari to be injured and damaged by COSB's wrongful policies, or deliberate lack thereof, and was deliberately

1   indifferent to the risk of such injury or harm. The aforementioned breaches and failures of

2   COSB occurred in contravention of public policy and their legal duties and obligations to

3   Plaintiffs and Jamari.

4          148.   The above actions, and/or inactions, namely the customs, practices, and/or

5   procedures of Defendant COSB were the moving force behind, and direct and proximate cause

6   of Plaintiffs' and Decedent's injuries. As a result, Plaintiffs and Decedent have sustained

7   general and special damages to an extent and in an amount to be proven at trial. Plaintiffs have

8   incurred attorney's fees that they will seek to recover as costs pursuant to 42 U.S.C. § 1988.

9   The damages sustained by Plaintiffs and for which they seek compensation include wrongful

10  death damages associated with the death of Jamari Mendez pursuant to Code of Civil Procedure

11  § 377.60.

12                          **SIXTH CAUSE OF ACTION**

13                        **Wrongful Death - CCP § 377.60**

14                          **By Plaintiffs J.G. and J.M.**

15                         **(As Against All Defendants)**

16         149.   Plaintiffs hereby refer to, incorporate by reference, and reallege as though fully

17  set forth in this cause of action, each and every allegation contained in the paragraphs preceding

18  this cause of action, and each and every allegation contained in the paragraphs following this

19  cause of action.

20         150.   As a direct and indirect result of the acts and omissions of Defendants, and each

21  of them, as herein alleged, Jamari Mendez sustained severe and serious injuries resulting in his

22  death on or about April 25, 2022.

23         151.   As a direct and legal result of the conduct of the Defendants, and each of them,

24  and of the death of Jamari Mendez, Plaintiffs J.G. and J.M. have suffered both special and

25  general damages, including but not limited to loss of the society, companionship, comfort and

26  support of their brother, in an amount to be shown according to proof.

27         WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

28         1.     For general damages in an amount according to proof, within the jurisdictional

                                            38

1    limits of this Court;

2    2.    For special damages in an amount according to proof, within the jurisdictional

3          limits of this Court;

4    3.    For costs of suit incurred herein, including attorney's fees pursuant to 42 U.S.C.

5          § 1988, and;

6    4.    For such other and further damages as provided by law, or such relief as the

7          Court may deem just and proper.

8
      Dated:  July 12, 2023                          Law Offices of Jack H. Anthony
9

10

11                                                   Jack H. Anthony, Esq.
12                                                   Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

39

**COMPLAINT**